842 F.2d 1293
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Naseem Ahmed WASEEM, Defendant-Appellant.
 No. 87-5543.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1988.
Decided March 14, 1988.
 
 Robert M. Byrne (Byrne & Mann, on brief), for appellant.
 (Henry E. Hudson, United States Attorney; Steven Gregory McKnight, Special Assistant United States Attorney; William G. Otis, Assistant United States Attorney, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Naseem Ahmed Waseem appeals from his convictions under 18 U.S.C.A. Sec. 472 (West 1976) for passing two counterfeit $100.00 bills. We affirm.
 
 I.
 
 2
 On May 24, 1986 an individual purchased a money order with two counterfeit $100.00 bills from the clerk at a Seven-Eleven convenience store in Fairfax, Virginia. Immediately after the transaction the clerk became suspicious of the bills and called police. Information supplied by the clerk led to Waseem's immediate arrest.
 
 
 3
 At trial Waseem did not dispute that he passed the bills on May 24, but he asserted that he did not know they were counterfeit. During the trial the government proffered evidence of another incident which occurred the evening of May 23, 1986, in which an individual purchased a money order with two counterfeit $100.00 bills from Ms. Rebecca King, a clerk at a Seven-Eleven store in Camp Springs, Maryland. Ms. King had ample opportunity to observe the purchaser of the money order at close range while engaging in a brief conversation with him. She described him to police as an individual in his early 40's and of apparent Middle Eastern descent, 5'7"' to 5'8"' in height, 150 to 160 pounds, with brown eyes and brown hair. This generally described Waseem.
 
 
 4
 Approximately two weeks later Ms. King was shown a photograph lineup consisting of six separate pictures of men, all apparently of Middle Eastern origin. In the photograph of Waseem, he was wearing civilian clothes, seated at a desk with his hands folded. With very close examination, the photograph showed that his hands were cuffed. The district court noted that it was "very hard to tell" Waseem was wearing handcuffs due to the manner in which his hands were folded and his arms were placed on the desk. The other individuals in the lineup were apparently standing, several in front of a police height board. Ms. King reviewed the pictures for a few minutes and identified the photograph of Waseem.
 
 
 5
 Over the objection of defense counsel the photograph lineup identification was admitted into evidence. Ms. King also identified Waseem at trial. Expert testimony established that all four counterfeit bills were printed on the same printing press, confiscated in Asia in 1985.
 
 
 6
 Waseem, a former employee of Seven-Eleven, testified that the Camp Springs, Maryland store is located within a few blocks of his home and that he has been there "many times." He admitted that he was in the store on the evening of May 23 and that he had purchased a money order there but was uncertain when the purchase was made.
 
 II.
 
 7
 Waseem argues that the district court committed reversible error in admitting the photograph lineup identification and Ms. King's subsequent identification in court. We disagree.
 
 
 8
 The standard for admissibility of a photograph lineup and the related in-court identification testimony is whether the procedure used is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 197 (1972); (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). Under Manson v. Brathwaite, 432 U.S. 98, 114 (1977), factors to be considered in determining the reliability of the identification by Ms. King were her opportunity to view the subject at the time of the crime; her degree of attention; the level of certainty demonstrated in making the identification; the accuracy of the prior description; and the time elapsed between the observation of the defendant and identification. The corrupting effect of a suggestive identification must be weighed against these factors. Id.
 
 
 9
 Ms. King had sufficient opportunity to view the purchaser of the money order while conversing with him in a well-lighted room. Shortly after this she gave a description to police which sufficiently described Waseem. Less than two weeks later she studied six photographs of men of similar appearance for several minutes and identified Waseem as the man who gave her the counterfeit bills on May 23. It is unclear from the record whether she noticed the handcuffs, which the district court found to be generally unobtrusive in the photograph. However, assuming that she did notice the handcuffs, they could have merely suggested that the subject in the picture was in custody, which was similarly suggested in other photographs by the presence of height boards. The photograph lineup was not a model of preferred procedure but did not amount to reversible error.
 
 
 10
 AFFIRMED.